1

2

3

4

5

6

7          IN THE UNITED STATES DISTRICT COURT

8         FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10   DANIEL MARTIN MOLIERI, et al.,          No. C-10-5430 MMC

11            Plaintiffs,            **ORDER DENYING SAN FRANCISCO**
                                     **DEFENDANTS' MOTION FOR**
12       v.                          **RECONSIDERATION**

13   COUNTY OF MARIN, et al.,

14            Defendants.
     _____/

15

16        By order filed April 16, 2012, in which the Court ruled on the parties' respective

17   motions for summary judgment, the Court found, as to plaintiffs' federal claim of unlawful

18   entry, that defendants Sergeant James O'Malley ("Sgt. O'Malley") and Sergeant Raymond

19   Cox ("Sgt. Cox") were not entitled to summary judgment on the basis of qualified immunity.

20        Before the Court is a motion, filed May 11, 2012 and supplemented June 1, 2012, by

21   defendants City and County of San Francisco, Sgt. O'Malley and Sgt. Cox (collectively,

22   "San Francisco Defendants"), seeking reconsideration of said finding.  Plaintiffs Danilo

23   Molieri ("Danilo") and Daniel Molieri ("Daniel") have filed opposition, to which the San

24   Francisco Defendants have replied.  With leave of the court, the parties have also filed

25   supplemental briefs.  Having read and considered the parties' respective written

26   submissions, the Court hereby rules as follows.[1]

27   _____

28        [1]At the Further Status Conference conducted July 27, 2012, the Court advised the
     parties that, following completion of the supplemental briefing, the Court would take the
     matter under submission.

United States District Court

For the Northern District of California

**BACKGROUND**

The following facts are undisputed or, if disputed, are stated in the light most favorable to plaintiffs.[2]

On December 7, 2009, Danilo was arrested by Marin County Sheriff's Department Deputy Erik Richardson ("Deputy Richardson"), based on Deputy Richardson's belief that Danilo was the "aggressor" in a dispute between Danilo and a woman, identified by the parties hereto as "T.W."  (See Burris Decl. Ex. A at 181:15-24, 203:4-11; Ex. B at 67:1-4.) Later that evening, a state court judge, upon application by Deputy Richardson, issued an Emergency Protective Order ("EPO") that, inter alia, prohibited Danilo from telephoning or sending messages to T.W.  (See id. Ex. B at 69-71 and Ex. 1 attached to Ex. B.)  The next day, December 8, 2009, Deputy Richardson contacted T.W. and learned from her that Danilo had emailed and telephoned her after the EPO had been issued.  (See id. Ex. B at 100:9-11, 103:8-15, 106:1-7.)  Deputy Richardson decided to arrest Danilo for violating the terms of the EPO.  (See id. Ex. B at 109:4-7.)

Deputy Richardson, who was aware that Danilo resided in San Francisco, contacted the dispatch office of the San Francisco Police Department to request assistance from San Francisco police officers.  (See id. Ex. 8 attached to Ex. B.)  Sgt. Cox then called Deputy Richardson, who told Sgt. Cox that Danilo had violated the terms of a restraining order, that he wanted San Francisco police officers to "attempt to make contact" with Danilo, and that he would "come and arrest him."  (See id. Ex. F at 50:2-15.)  Deputy Richardson also requested that Sgt. Cox advise him if Danilo was not at his residence because, Deputy Richardson explained, if Danilo was not at his residence, Deputy Richardson planned to "get a warrant in the future."  (See id. Ex. F at 50:16-21.)

After completing his call to Deputy Richardson, Sgt. Cox spoke to Sgt. O'Malley, and told him "Marin wanted [San Francisco] to retain Mr. Molieri" and that "if he was there, they

---

[2] Although plaintiffs' claims arise from several events, the instant motion pertains solely to a December 8, 2009 entry by San Francisco police officers into plaintiffs' residence.

1   were going to come and pick him up." (See id. Ex. F at 53:19-22.) Sgt. Cox also told Sgt.

2   O'Malley that the Marin County Sheriff's Office did not have a warrant, but would get one in

3   the future if they needed to do so. (See id. Ex. F at 115:24 - 116:5.) Sgt. O'Malley

4   "volunteered to head up the call." (See id. Ex. G at 24:22-24.) Sgt. O'Malley was aware

5   that Danilo was wanted on a "misdemeanor allegation." (See Gerchow Decl., filed March 2,

6   2012, Ex. C at 28:15-16.)

7        Danilo, his son Daniel, and Nikolai Bonds ("Nikolai"), a friend, were at plaintiffs'

8   residence in San Francisco when, at approximately 8:00 p.m., Danilo heard "pounding" at

9   the front door. (See Burris Decl. Ex. A at 291:2-14.) When Danilo went to the door and

10  "asked who it was," he heard a person yelling, "San Francisco Police Department. Open

11  the door." (See id. Ex. A at 291:17-21; 292:11-15.) Danilo looked through a peephole and

12  saw police officers (see id. Ex. A at 291:22 - 292:2), and then asked, "For what?" (see id.

13  Ex. A at 292:24 - 293:1). Danilo next heard Sgt. O'Malley state, "You need to open the

14  door" (see id. Ex. A at 293:2-3), and then state, as recounted by Danilo, that "it was a Marin

15  situation involving some sort of violation and that they were bringing the warrant down to

16  [him]" (see id. Ex. A at 265:24 - 266:3). Danilo responded, "I'm not opening the door," and

17  then one of the officers "kicked the door." (See id. Ex. A at 293:4-23.) Danilo then walked

18  away from the door and telephoned his attorney. (See id. Ex. A at 293:5-8, 294:18-25.) As

19  he walked away from the door to make the call, he heard someone "pound[ing] hard a

20  couple extra times." (See id. Ex. A at 293:24 - 294:3.) After Danilo spoke with his attorney

21  for a minute or two, he then returned to the door, and stated, "I'm opening the door only

22  because you say you have a warrant." (See id. Ex. A at 295:1-7.)

23       Danilo then opened the door, and Sgt. O'Malley and two officers wearing

24  "plainclothes" entered the residence. (See id. Ex. A at 295:22 - 296:19.)[3]  Once the

25

26       [3]Sgt. Cox arrived at the scene before any officer had entered the residence, and, as
    he walked up the stairs to the residence, he could hear "knocking at the door" and an
27  officer saying something about a warrant. (See Gerchow Decl. Ex. B at 68:16-25; Burris
    Decl. Ex. F at 69:1-24.) When he got to the top of the stairs, "the door was already
28  opened" and "the officers were inside"; he then entered the residence. (See Gerchow
    Decl. Ex. B at 68:6-7; 19-23.)

1    officers were inside the residence, one of the plainclothes officers did a "quick pat-down

2    search" of Danilo and ordered Daniel and Nikolai to "sit down in the living room." (See id.

3    Ex. A at 295:25 - 296:2.) About an hour after the San Francisco officers entered the

4    residence, Deputy Richardson, accompanied by Sergeant Scardina of the Marin County

5    Sheriff's Department, arrived at the residence (see Burris Decl. Ex. A at 251:20-25; Ex. B at

6    22:25; Gerchow Decl. Ex. D at 298:14-16), where they conducted a search and seized

7    three handguns (see Burris Decl. Ex. A at 276:13-25); they then took Danilo to a "booking

8    facility" (see id. Ex. A at 301:19-25).[4]

9                                    **DISCUSSION**

10        In the First Cause of Action, plaintiffs allege, inter alia, that Sgt. O'Malley and Sgt.

11   Cox violated 42 U.S.C. § 1983 by unlawfully entering plaintiffs' residence. The issue before

12   the Court is whether the Court should reconsider its prior determination that, at the

13   summary judgment stage, the San Francisco Defendants have not shown Sgt. O'Malley

14   and Sgt. Cox are entitled to qualified immunity with respect to said claim. In particular, the

15   San Francisco Defendants seek reconsideration of the Court's determination as to whether

16   "the federal right alleged to be violated was clearly established law." (See Defs.' Req. for

17   Leave to File Mot. for Reconsideration, filed May 11, 2012, at 2:4-5.)

18        "Qualified immunity shields government officials from civil damages liability unless

19   the official violated a statutory or constitutional right that was clearly established at the time

20   of the challenged conduct." Reichle v. Howards, 132 S. Ct. 2088, 2093 (2012). "To be

21   clearly established, a right must be sufficiently clear that every reasonable official would

22   have understood that what he is doing violates that right." Id. (internal quotation, alteration

23   and citation omitted). "In other words, existing precedent must have placed the statutory or

24   constitutional question beyond debate." Id. (internal quotation and citation omitted). "This

25   'clearly established' standard protects the balance between vindication of constitutional

26

27        [4]Subsequent thereto, criminal charges arising from the December 7, 2009 incident in
     Marin County and from the alleged December 8, 2009 violation of the Marin County EPO
28   were filed against Danilo, but ultimately were dismissed. (See Giacomini Decl., filed March
     2, 2012, Ex. B at 281.)

4

1   rights and government officials effective performance of their duties by ensuring that

2   officials can reasonably . . . anticipate when their conduct may give rise to liability for

3   damages." Id. (internal quotation and citation omitted).

4          The federal right at issue here has been acknowledged by the Supreme Court as

5   follows:  "[I]n the absence of consent or exigent circumstances . . . . we have consistently

6   held that the entry into a home to conduct a search or make an arrest is unreasonable

7   under the Fourth Amendment unless done pursuant to a warrant." See Steagald v. United

8   States, 451 U.S. 204, 211 (1981).  It is undisputed that a warrant did not exist at the time of

9   the entry, and the San Francisco Defendants have not asserted that exigent circumstances

10  required them to enter the residence.  Consequently, the entry and subsequent detention

11  were "unreasonable under the Fourth Amendment" unless Danilo consented to the entry.

12  See id.  Defendants, in their motion for reconsideration, argue that a reasonable officer

13  would have believed that Danilo gave valid consent to the entry.

14         Precedent existing well before December 8, 2009 clearly establishes that consent to

15  enter into a residence is invalid where the resident complies with a police demand to enter

16  or assertion of a right to enter.  In Bumper v. North Carolina, 391 U.S. 543 (1968), for

17  example, the Supreme Court held "there can be no consent" where "that 'consent' has

18  been given only after the [officer] has asserted that he possesses a warrant." See id. at

19  548.  As another example, in Orhorhaghe v. Immigration and Naturalization Service, 38

20  F.3d 488 (9th Cir. 1994), the Ninth Circuit held there was no consent where the

21  homeowner allowed officers into his residence only after he had asked one of those

22  officers if he had a warrant and the officer responded that he "didn't need a warrant," thus

23  making an "implied claim of a right to conduct the search." See id. at 500-01.  In a number

24  of other cases, a lack of consent has been found where officers demanded the occupant

25  open the door, irrespective of whether any reference to a warrant or the lack of need

26  therefor was made.  See, e.g., Johnson v. United States, 333 U.S. 10, 12-13 (1948)

27  (holding entry "was granted in submission to authority" and nonconsensual, where officer

28  knocked and identified himself, and, after door was opened, officer stated, "I want to talk to

5

1   you a bit"); United States v. Bautista, 362 F.3d 584, 591-92 (9th Cir. 2004) (holding

2   resident's opening door and not objecting to entry "cannot be deemed consensual" where

3   officer stated, "San Diego police.  Open the door."); United States v. Winsor, 846 F.2d

4   1569, 1573 n.3 (9th Cir. 1988) (finding "no consent as a matter of law" where citizen

5   opened door in response to officers' knocking, identifying themselves as officers, and

6   "demand[ing] that the occupants open the door").

7        Because the San Francisco Defendants seek resolution of the issue of qualified

8   immunity in the context of a motion for summary judgment, the Court, in considering the

9   matter, must construe the evidence offered in the light most favorable to plaintiffs.  See

10  Liberal v. Estrada, 632 F.3d 1064, 1078 (9th Cir. 2011) (affirming denial of officers' motion

11  for summary judgment on issue of qualified immunity as to claim they unreasonably used

12  handcuffs during traffic stop; finding that although "some of the evidence supported

13  defendants' contention that they had legitimate safety and security concerns," the evidence

14  construed in plaintiff's favor "fail[ed] to show any basis for the initial stop [or] the

15  handcuffing").

16       Here, the evidence, construed in the light most favorable to plaintiffs, supports a

17  finding that San Francisco police officers identified themselves as officers and loudly

18  knocked on plaintiffs' door repeatedly, that one officer yelled a command to "open the

19  door," and that Sgt. O'Malley, who knew no warrant existed, told Danilo he "need[ed] to

20  open the door" and that officers from Marin County were bringing "the warrant."  (See

21  Burris Decl. Ex. A at 291:17-21, 293:2-3, 266:1-3.)[5]  Further, the evidence, construed in the

22

23       [5]The San Francisco Defendants object to Danilo's testimony identifying Sgt.
24  O'Malley as the speaker, for the asserted reason that Danilo did not testify at his deposition
    that he could see the person who spoke.  In light of Danilo's testimony that he spoke to Sgt.
    O'Malley "10, 15 times" while Sgt. O'Malley was in the residence, that he heard Sgt.
25  O'Malley speak to others while Sgt. O'Malley was in the residence, and that he spoke to
    Sgt. O'Malley by telephone about a week after December 8, 2009 (see Gerchow Decl. Ex.
26  D at 267:10-19, 297:8-15, 298:14 - 300:17, 304:19 - 305:2), the Court finds plaintiffs have
    submitted sufficient evidence from which a trier of fact reasonably could find Danilo is able
27  to identify O'Malley's voice.  See Fed. R. Evid. 901(b)(5) (providing party may offer "opinion
    identifying a voice" where opinion is based on "hearing the voice at any time under
28  circumstances that connect it with the alleged speaker").

1  light most favorable to plaintiffs, supports a finding that after said activity, Danilo stated he

2  would not open the door, that his door was then kicked and repeatedly knocked, and that

3  after Danilo briefly spoke on the telephone with an attorney, he then opened the door and

4  allowed the officers to enter after stating he was doing so because the officers said they

5  had a warrant.

6          The Court finds, consistent with its order of April 16, 2012, the San Francisco

7  Defendants have not established that Sgt. O'Malley and Sgt. Cox are, as a matter of law,

8  entitled to qualified immunity with respect to plaintiffs' claim of unlawful entry.  If a trier of

9  fact credits the evidence on which plaintiffs rely, the trier of fact could reasonably find that

10 Danilo allowed Sgt. O'Malley, Sgt. Cox, and two other San Francisco police officers, into

11 the residence solely in response to police demands.  In particular, the trier of fact could

12 reasonably find Danilo allowed the officers to enter in response to a demand by Sgt.

13 O'Malley that Danilo open the door and an assertion by Sgt. O'Malley that they had a right

14 to enter because a warrant had been issued.  Should the trier of fact find the encounter

15 occurred in such a manner, consent could not be established in light of the clearly

16 established federal authority identified above.

17         Although the San Francisco Defendants argue they nonetheless are entitled to

18 qualified immunity, the Court, at the summary judgment stage, is not persuaded.  In

19 particular, the San Francisco Defendants argue, there exists a distinction between a

20 statement that conveys an officer has an immediate right to enter and a statement that

21 conveys the officer may or will have the right to enter in the future.  The San Francisco

22 Defendants are correct that such a distinction is drawn in the cases.  See, e.g., United

23 States v. Kaplan, 895 F.2d 618, 622 (9th Cir. 1990) ("[C]onsent is not likely to be held

24 invalid where an officer tells a [resident] that he could obtain a search warrant if the officer

25 had probable cause upon which a warrant could issue."); see also United States v. Castillo,

26 866 F.2d 1071, 1081-82 (9th Cir. 1989) (holding consent validly given where resident

27 allowed officers to enter after officers told resident "he had a right not to consent, and if he

28 chose not to, the officers would attempt to get a search warrant" and that officers "did not

7

1   know whether a judge would issue a search warrant").

2       Construing the facts in the instant case in the light most favorable to plaintiffs,

3   however, the statements made at the door of plaintiffs' residence, and, in particular, Sgt.

4   O'Malley's statements that Danilo "need[ed] to open the door" and words to the effect that

5   "the warrant" was being brought by other officers, are not statements conveying that the

6   officers at the door might have a right to enter the premises in the future, but, rather, a

7   statement that said officers had the immediate right to enter.  In short, a trier of fact could

8   find Sgt. O'Malley intended to make, and reasonably was understood by Danilo to have

9   made, a statement that the officers at the door had the immediate right to enter the

10  premises.

11      The San Francisco Defendants further argue that, for purposes of qualified

12  immunity, a distinction should be drawn between a demand based on a statement that a

13  warrant is in the physical possession of the person making the demand, such as in

14  Bumpers, from a demand based on a statement that a warrant is in the physical

15  possession of an officer other than the person making the demand.  In essence, the San

16  Francisco Defendants argue, Sgt. O'Malley and Sgt Cox were not on notice from existing

17  case law that there can be no consent where entry is allowed in response to a statement

18  that a warrant exists but is not in the physical possession of the demanding officer.  In

19  support of said argument, the San Francisco Defendants rely on Burrell v. McIlroy, 464

20  F.3d 853 (9th Cir. 2006), cert. denied, 549 U.S. 1184 (2007).

21      As explained in the Court's order of April 16, 2012, Burrell is distinguishable on its

22  facts.  In Burrell, the Ninth Circuit found the defendant officer therein was entitled to

23  qualified immunity, where such officer truthfully advised a resident he was "awaiting a

24  search warrant" for another address, and the resident gave consent to search, apparently

25  having "misunderstood" the officer to have claimed a warrant had been obtained to search

26  her home.  See id. at 859.  In finding the officer therein was entitled to qualified immunity,

27  the Ninth Circuit observed, "there is nothing in the record that indicates that [the officer]

28  was aware of [the resident's] misinterpretation."  Here, by contrast, plaintiffs have offered

8

1   evidence to support a finding that Sgt. O'Malley demanded the door be opened,

2   immediately made reference to an existing warrant, and, unlike the resident in Burrell,

3   Danilo expressly advised the officers at the door that he was opening the door because he

4   had been told a warrant existed for the very premises at issue.[6]

5          Finally, the San Francisco Defendants argue that, irrespective of whether they

6   reasonably believed Danilo validly consented to entry, Sgt. O'Malley and Sgt. Cox

7   nonetheless are entitled to qualified immunity because they entered the residence after two

8   other officers had already entered.[7]  In support of this proposition, the San Francisco

9   Defendants rely on Ryburn v. Huff, 132 S. Ct. 987 (2012) and United States v. Bramble,

10  103 F.3d 1475 (9th Cir. 1997).  Neither such case, however, is applicable here.[8]

11         In Ryburn, the Supreme Court held "[a] reasonable police officer could read [existing

12  case law] to mean that the Fourth Amendment permits an officer to enter a residence if the

13  officer has a reasonable basis for concluding that there is an imminent threat of violence."

14  See Ryburn, 132 S. Ct. at 990.  Here, however, the San Francisco Defendants point to no

15  evidence to support a finding, let alone show it is undisputed, that Sgt. O'Malley and/or Sgt.

16  _____

17         [6]The San Francisco Defendants also rely on the Ninth Circuit's observation in Burrell
    that "the fact that an officer states that a search warrant is on the way is but one factor to
18  consider amidst the totality of the circumstances," see id., which decision the San
    Francisco Defendants assert is reasonably understood to mean that consent obtained as a
19  result of a statement that a "warrant is on the way" is not necessarily invalid.  Each of the
    cases cited in Burrell for such proposition, however, involves a statement by the officer that
20  a warrant did not presently exist and that the officer would attempt to obtain one in the
    future.  See id. (citing cases).

21         [7]Although it is undisputed that Sgt. Cox entered after the other officers, the only
    evidence offered as to when Sgt. O'Malley entered the residence is that he entered at the
22  same time as the two plainclothes officers.  (See Burris Decl. Ex. A at 275:11-15.)

23         [8]Initially, in connection with their motion for summary judgment, the San Francisco
    Defendants argued that qualified immunity can be based on a reasonable mistake of fact.
24  See Huff v. City of Burbank, 632 F.3d 539, 549 (9th Cir. 2011) (holding officers entitled to
    qualified immunity, where they reasonably but mistakenly believed other officers who
25  earlier entered residence had consent), rev'd on other grounds, 132 S. Ct. 987 (2012).  As
    the Court pointed out in its prior order, however, the San Francisco Defendants have
26  submitted no evidence to support such a finding.  (See Order, filed April 16, 2012, at 10:9-
    13); see also Houghton v. South, 965 F.2d 1532, 1536 (9th Cir. 1992) (holding defendant
27  seeking summary judgment on issue of qualified immunity must, to meet initial burden,
    submit "evidence which would entitle [him] to a directed verdict if the evidence went
28  uncontroverted at trial").

9

Cox believed any person in plaintiffs' residence posed "an imminent threat of violence" to the plainclothes officers in the residence or to anyone else in or near the residence.

In <u>Bramble</u>, the Ninth Circuit held that where an "officer is invited into a home, establishes the existence of probable cause to arrest or search, and immediately summons help from other officers, the warrantless entry of the other officers does not violate the Fourth Amendment," for the reason that "[o]nce consent has been obtained form one with the authority to give it, any expectation of privacy has been lost." <u>See</u> <u>Bramble</u>, 103 F.3d at 1478. Even if <u>Bramble</u> is read more broadly to hold that, irrespective of the particular circumstances, if a resident consents to the entry of any police officer, any other officer may then enter without the need for the resident to provide additional consent, here, construing the evidence in the light most favorable to plaintiffs, Danilo did not consent to the entry of any officer.

In sum, the San Francisco Defendants have failed to show grounds exist for reconsideration of the Court's finding as set forth in its order of April 16, 2012. Specifically, the San Francisco Defendants have not shown Sgt. O'Malley and Sgt. Cox are, as a matter of law, entitled to summary judgment with respect to plaintiffs' claim of unlawful entry.

**CONCLUSION**

For the reasons stated above, the San Francisco Defendants' motion for reconsideration is hereby DENIED.

**IT IS SO ORDERED.**

Dated: October 25, 2012

MAXINE M. CHESNEY
United States District Judge

10